FILED
U.S. District Court
District of Kansas

JAN 0 9 2018

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MONICA ANDROES, Individually, and for and on behalf of the surviving Heirs-at-Law of DIANA PAGE, deceased,<br><br>Plaintiff,<br><br>v.<br><br>WHITNEY NEWBERRY, ARNP;<br>STEVEN SCHEUFLER, M.D.;<br>SUMNER REGIONAL MEDICAL CENTER<br><br>Defendants. | Case No.: 18-cv-1011-JTM-GEB |

## COMPLAINT

**COMES NOW** the Plaintiff, Monica Androes, individually, and for and on behalf of all of the surviving heirs-at-law of Diana Page, deceased, and for her causes of action against these Defendant alleges and states as follows:

## I. THE PARTIES

1. This action is a diversity action between a citizen of another state and citizens of the State of Kansas.

2. Diana Page, deceased, was born December 21, 1947, and passed away January 9, 2016 at Harry Hynes Memorial Hospice in Wichita, Kansas.

3. Plaintiff Monica Androes is the surviving daughter of Diana Page, deceased, and is a citizen and resident of the State of South Carolina.

4. Plaintiff Monica Androes, individually, and for and on behalf of all of the surviving heirs of Diana Page, deceased, brings this action for the

· 1

wrongful death of Diana Page, deceased, pursuant to the provisions of K.S.A. § 60-1901 *et seq.*

5. Defendant Whitney Newberry, ARNP, is a nurse practitioner licensed to and practicing medicine in the State of Kansas with a current and correct post office address of 507 E 16th St., Suite 1, Wellington, KS 67152. Process and service of Summons is requested upon said Defendant by serving her at her residential address located at 437 S West Rd, Wellington, KS 67152-8424.

6. At all times material hereto, Defendant Whitney Newberry, ARNP, held herself out as offering that degree of medical care and treatment as other midlevel practitioners with the same or similar training under the same or similar circumstances.

7. At all times material hereto, a midlevel practitioner-patient relationship existed between Diana Page, deceased, and Defendant Whitney Newberry, ARNP.

8. Defendant Steven Scheufler, M.D., is a physician licensed to and practicing medicine in the State of Kansas with a current and correct post office address of 507 E 16th St., Suite 1, Wellington, KS 67152. Process and service of Summons is requested upon said Defendant by serving him at his residential address located at 11 Crestway St., Wellington, KS 67152-3277.

9. At all times material hereto, Defendant Steven Scheufler, M.D., held himself out as offering that degree of medical care and treatment as other

physicians with the same or similar training under the same of similar circumstances.

10. At all times material hereto, a physician-patient relationship existed between Diana Page, deceased, and Defendant Steven Scheufler, M.D.

11. Defendant Sumner Regional Medical Center is located at 1323 N. A St., Wellington, KS. It carries a designation as a Critical Access Hospital (CAH) which allows higher reimbursement in exchange SRMC must meet specific criteria including an agreement with an acute care hospital related to emergency and non-emergency patient transports.

12. At all times material hereto, Defendant Sumner Regional Medical Center held itself out as offering that degree of medical care and treatment as other similar hospitals under the same or similar circumstances.

13. At all times material hereto, Defendant Sumner Regional Medical Center owed Diana Page, deceased, a duty to practice medicine within the acceptable standard of care as other similar hospitals under the same or similar circumstances.

14. Defendant Sumner Regional Medical Center may be served with Summons by serving its president and chief executive officer, Les Dean, at 1323 North A Street, Wellington, KS 67152. That process and service of process is requested upon said Defendant by serving this individual at the above stated address.

## II. JURISDICTION AND VENUE

3

15. Plaintiff adopts and incorporates by reference paragraphs 1 through 14 of her Complaint as if fully set forth herein.

16. These proceedings arise under and jurisdiction is founded upon 28 U.S.C. § 1332(a) and the laws of the United States of America as there exists complete diversity of citizenship between the Plaintiff and all the Defendants and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

17. The Defendants, as citizens and residents of the State of Kansas, have sufficient contacts to subject themselves to the personal jurisdiction of this Court and the other courts in the State of Kansas.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as all the Defendants are citizens and residents of the State of Kansas.

### III. FACTS COMMON TO ALL COUNTS

19. Plaintiff adopts and incorporates by reference paragraphs 1 through 18 of her Complaint as if fully set forth herein.

20. On Tuesday, December 8, 2015 at 9:30am Diana Page, deceased, arrives to the Emergency Room of Defendant Sumner Regional Medical Hospital via EMS transport complaining of nausea and diarrhea. Vital signs and assessment were completed. Defendant Newberry, ARNP, was called and updated regarding Diana Page's, deceased, arrival and status. Orders were placed for lab work, peripheral IV and a fluid bolus.

21. Vital signs for Diana Page, deceased, from EMS and ER triage were as follows: 9:20am - pulse (P)= 112(HI), blood pressure (BP) = 120/76,

4

respirations (R)= 16, oxygen saturation (O2 Sat) = 96; 9:45am - P= 116(HI), BP= 120/55(Low), R=20, O2 Sat = 94, temperature = 36.4 (97.5).

22. At 10:00am a fluid bolus of 1,000 ml of .9 NaCL began infusing at 500ml/hr.

23. Diana Page, deceased, stated she felt the urge to urinate again after an unsuccessful attempt on a bedpan earlier. A straight catheter was ordered and completed by nurse producing 15cc of urine which was sent to the lab. That was the only urine Diana Page, deceased, produced at Defendant SRMC over the course of 10 hours.

24. At 10:25am Defendant Newberry, ARNP arrived at bedside for assessment. She ordered Zofran for nausea.

25. At 10:45am vitals were recorded as follows: P= 73, BP = 124/77, R= 18, O2 Sat= 94%.

26. At 11:15am Diana Page, deceased, was documented as more alert when nurse entered her room. She is feeling a little better.

27. At 11:25am Diana Page, deceased, continued to be hypotensive. Her vital signs were recorded as P= 103 HI, BP = 82 LOW/65, R= 18, O2 Sat = 95%. Defendant W. Newberry, ARNP was updated and notified that Defendant Dr. Steve Scheufler, on call physician (OCP), to be notified of patient status and consulted for further care.

28. At 11:29am SEPSIS ALERT was issued by hospital computers. It states "The following information suggests that this patient may have sepsis. Please notify the physician immediately to ensure the patient is on the

5

appropriate medication therapy. Early goal directed therapy is essential for the treatment of sepsis. Time dependent intervention may impact patient outcome." SIRS Criteria: 12/08/2015 09:45 CST WBC = 12.7x10-3/uL [Greater than or equal to 12.1] 12/08/2015 09:45 CST Bands = 20% (H) [Greater than or equal to 10.1] 12/8/2015 11:25 CST HR = 103 bpm(H) [Greater than or equal to 96] Organ Dysfunction: 12/08/2015 11:25 CST Sys BP = 82(L) [Less than 90]

29. At 11:50am Defendant Newberry, ARNP calls and states Defendant Dr. Scheufler plans to admit plaintiff for observation/short stay.

30. At 11:55am vitals were recorded and blood pressure continues to be low. [P= 87, BP 90/44(L), R= 18, O2 Sat = 92%.]

31. At 12:12pm Defendant Newberry arrived to write admission orders including, but not limited to, blood cultures and a change in antibiotics due to sepsis alert, vitals q4hrs, IVF's at 200ml/hr, I&O's.

32. At 12:45pm plaintiff was discharged from the ER and admitted to Defendant SRMC for observation. Diana Page, deceased continued to have significant weakness requiring assistance from 3 nurses and slide board to transfer beds and at least 2 people to use bedside commode. A stool sample was obtained but no urine was recorded. IV antibiotic was started at 13:05pm.

33. At 14:23pm vital signs were recorded as follows: T= 37.8/99.7(H), P= 103(H), BP= 94/57(L), R= 18. Diana Page, deceased is still experiencing significant hypotension.

6

34. At 17:00pm day nurse reported to on coming night nurse that Diana Page, deceased, remained asleep. Thirty minutes later the night nurse reports Diana Page, deceased, is restless and flails about in bed and does not respond appropriately to questions. Defendant Dr Scheufler arrived at 17:40 to evaluate Diana Page, deceased.

35. At 18:00pm Diana page's, deceased, BP was 62/42. This was reported to Defendant Dr Scheufler and he ordered the BP to be rechecked manually which was reported as 60/40.

36. At 18:15pm vital signs for Diana Page, deceased, were recorded as Temp= 38.1/100.6 (H), P= 113, BP= 65(L)/38(L), R=24, O2 Sat= 92.

37. At 18:10pm Defendant Dr Scheufler attempted to reach Diana Page's, deceased, surgeon (Dr. Niederee) for transfer to St Joseph. Defendant Dr Scheufler ordered another fluid bolus, and dopamine drip in an attempt to raise Diana Page's, deceased, blood pressure. With families assistance Dr Niederee was contacted and agreed to accept Diana Page, deceased, in transfer. Labs were drawn to evaluate cause of hypotension and dopamine was started.

38. At 19:00pm Diana Page, deceased, had a BP was 78/38 on 5MCG/HR of dopamine.

39. At 19:15pm Diana Page, deceased, was transferred to EMS cot. The nurse documented that Diana Page, deceased, appeared more lucid but still lethargic and was talking randomly.

7

40. At 19:25pm EMS departed Defendant SRMC destined for St Joseph CCU room 12.

41. EMS reported leaving scene at 19:31pm and arriving at destination 26 minutes later at 19:57pm. Diana Page, deceased, experienced a drop in systolic BP into the 40's and also required electrical intervention at 19:38pm, 7 minutes after departure.

42. Diana Page, deceased, was given 2000ml IVF's IV push, dopamine was discontinued, and vasopressors initiated upon arrival to St Joseph. Dr Niederee reported an improvement in the mental status of Diana Page, deceased, answering appropriately however she deteriorated throughout the night.

43. Per family, Diana Page, deceased, spent over a week in CCU being treated for complications from septic shock including hypotension, acute respiratory distress syndrome (ARDS), disseminated intravascular coagulation (DIC) and acute renal failure (ARF). She was able to overcome the hypotension, ARDS and DIC but continued to require the ventilator and dialysis. The vasopressors used to treat the hypotension caused ischemia of her upper and lower extremities which progressed to gangrene. Diana Page, deceased, underwent a below knee amputation and was expected to lose the other leg as well as amputations of both hands. Due to the circumstances and peritonitis family decided to discontinue ventilator support.

44. Diana Page, deceased, passed away January 9, 2015 shortly after arriving to the Harry Hines hospice floor at St Francis.

## COUNT 1: MEDICAL NEGLECT/WRONGFUL DEATH
**(DEFENDANTS WHITNEY NEWBERRY, ARNP & DR STEVEN SCHEUFFLER)**

45. Plaintiff adopts and incorporates by reference paragraphs 1 through 44 of her Complaint as if fully set forth herein.

46. The medical care, diagnosis, evaluation, and treatment which Defendants Whitney Newberry, ARNP and Steven Scheufler, M.D. provided Diana Page, deceased, fell below the acceptable standards of medical care and treatment and constitute negligence and fault on the part of these Defendants. Said departures and deviations from the acceptable standards of care by these Defendants directly caused and/or contributed to the wrongful death of Diana Page, deceased, and the damages which the heirs-at-law of Diana Page, deceased, have sustained and suffered since the time of her death and those which they will continue to sustain and suffer in the future. Departures from the acceptable standards of medical care and treatment on the parts of Defendants Whitney Newberry, ARNP and Steven Scheufler, M.D. include but are not limited to:

   (a) Negligently failing to assess, manage, and treat Diana Page, deceased, for dehydration.

   (b) Negligently failing to recognize signs of septic shock.

9

(c) Negligently failing to have a protocol, or staff, that can properly evaluate and/or identify patients with symptoms of severe sepsis or septic shock after a Sepsis Alert is issued.

(d) Negligently failing to acknowledge or treat hypotension that was unresponsive to IV fluids.

(e) Negligently failing to address the lack of urine produced by Diana Page, deceased.

(f) Negligently failing to diagnose, assess, manage and treat Diana Page, deceased, at acceptable standards of medical care.

47. As a result of the separate and/or combined negligence and fault of these Defendants Whitney Newberry, ARNP and Steven Schoufler, M.D. which caused or contributed to the wrongful death of Diana Page, deceased, on January 9, 2015. Plaintiff and the other surviving heirs-at-law of Diana Page, deceased, have been made to sustain and suffer damages which include, but are not limited to mental anguish, suffering, bereavement, loss of society, loss of comfort, loss of companionship, loss of serviced, loss of attention, loss of filial care, loss of protection, funeral expenses and all other elements of damages as permitted by K.S.A. 60-1901, *et seq.*, all of which are in an amount in excess of $75,000.00.

48. No act or omission of the part of the decedent of the decedent's heir-at-law caused or contributed to the decedent's wrongful death or any of the resulting damages claimed herein.

10

49. The Plaintiff is entitled to a judgment against these Defendants in an amount in excess of $75,000.00, exclusive of interest and costs.

### COUNT II: MEDICAL NEGLIGENCE/WRONGFUL DEATH
### (DEFENDANT SUMNER REGIONAL MEDICAL CENTER)

50. Plaintiff adopts and incorporated by reference paragraphs 1 through 49 of her complaint as if fully set forth herein.

51. The medical care, diagnosis, evaluation, and treatment provided to Diana Page, deceased, by Defendant Sumner Regional Medical Center individually and by and through its employees and medical staff, fell below the acceptable standards of medical care and treatment and constitutes negligent and fault on the part of these Defendants, who are vicariously liable for the negligent acts and omissions of their employees committed within the nature and scope of their employment. These departures and deviations from the acceptable standards of care caused and/or contributed to the wrongful death of Diana Page, deceased, and the damages which the heirs-at-law of Diana Page, deceased, have sustained and suffered since the time of her death and those which they will continue to sustain and suffer in the future.

52. The departures from the acceptable standards of medical care and treatment of the part of the Defendant Sumner Regional Medical Center includes but is not limited to:

    (a) Negligently failing to address and acknowledge the Sepsis Alert issued by Defendant Sumner Regional Medical System's own computer system.

11

(b) Negligently failing to recognize the severity of Diana Page's, deceased, condition while in their care.

(c) Negligently failing to report abnormal vital signs.

(d) Negligently failing to identify and report the lack of urine output throughout the entire day.

(e) Negligently failing to diagnosis, assess, manage and treat Diana Page, deceased, at acceptable standards of medical care.

53. As a result of the separate and/or combined negligence and fault of Defendant Sumner Regional Medical Center by or through its employees and medical staff for whose conduct it is vicariously liable, which caused or contributed to the wrongful death of Diana Page, deceased, on January 9, 2015. Plaintiff and the other surviving heirs-at-law of Diana Page, deceased, have been made to sustain and suffer damages which include, but are not limited to mental anguish, suffering, bereavement, loss of society, loss of comfort, loss of companionship, loss of services, loss of attention, loss of filial care, loss of protection, funeral expenses and all other elements of damages as permitted by K.S.A. 60-1901, *et seq.*, all of which are in an amount in excess of $75,000.00.

54. No act or omission of the part of the decedent of the decedent's heir-at-law caused or contributed to the decedent's wrongful death or any of the resulting damages claimed herein.

55. The Plaintiff is entitled to a judgment against these Defendants in an amount in excess of $75,000.00, exclusive of interest and costs.

## V. CONCLUSION

WHEREFORE AND BY REASON OF THE ABOVE AND FOREGOING, Plaintiff prays that judgment be entered in her favor and against each of the Defendants in an amount in excess of $75,000.00, exclusive of interest and costs, and such other and further relief as the Court determines to be just and equitable.

Respectfully submitted,

*Monica Androes*

Monica Androes
103 Belclaire Ct
Spartanburg, SC 29301
864-576-9213
monandroes@yahoo.com
Plaintiff

I would like a trial in Wichita, KS if thats possible. Thanks.